389 P.2d 56

**MASTIC TILE DIVISION OF the RUBER-OID COMPANY, a corporation, Plaintiff and Respondent,**

**v.**

**ACME DISTRIBUTING COMPANY, a corporation, W. N. Beesley, Sr., and Scott L. Beesley, Defendants and Appellants.**

No. 9957.

Supreme Court of Utah.

Feb. 10, 1964.

---

9. Zeleny v. Karnosh, 224 Or. 419, 356 P.2d 426.

Beaslin, Nygaard & Coke, Salt Lake City, for appellants.

Hanson & Garrett, Salt Lake City, for respondent.

HENRIOD, Chief Justice.

Appeal from a judgment for plaintiff on motion for summary judgment. Affirmed. Costs to plaintiff.

Plaintiff, for many years, sold its products to defendant distributors. The latter became in arrears and plaintiff insisted that the obligation, amounting to about $80,000 be secured by a note and chattel mortgage. These were executed along with a separate agreement looking not to the termination of their business relations, but contemplating continuation thereof on a current open account basis, as is reflected in its preamble which recited, "Whereas, *Acme desires to continue as a distributor* of products sold by Mastic and *to obtain credit for its further purchases* from Mastic etc." The mortgage secured not only the note but future advances. The agreement mentioned above provided that to secure the note Acme agreed to assign to Mastic all of the former's "accounts receivable" present and future. No mention was made as to the disposition of returned inventory or to whether the note was secured thereby, except the note contained the usual provision for foreclosure.

At the time of execution of the documents mentioned, obviously designed to continue business relations, Acme assigned a debt owed to it by a former shareholder which was guaranteed by his father, Beesley, Sr., and a brother, Scott Beesley.

Several months later a friendly liquidation took place in which accounts receivable were assigned to Mastic to apply on the mortgage debt, together with other credits, and the entire inventory invoiced at about $20,000 was returned to Mastic and this amount was credited 57.7% to the note and 42.3% on the open account, the amounts due thereon being correlative with such percentages.

Mastic sued Acme under the documents mentioned and the two Beesleys on the debt

assigned by Acme and guaranteed by the Beesleys.

. Mastic. moved for summary judgment against the Beesleys, supporting its motion with the above-mentioned documents and counsel's affidavit. Beesleys made a like motion based on the documents and their counsel's affidavit, whereupon the trial court granted Mastic's motion and denied Beesleys'.

Beesleys urge 1) that the trial court misconstrued the language ·of the instruments ,which called for full credit of the inventory against the note and not by proration between it and the open account; 2) in failing to find that the assignment was. for security purposes. only; 3) that if the debt had been credited against the note, the latter would have been paid; and 4) that the summary judgment was error since there were triable issues of fact. .

■ As to 1) : We believe and hold that the trial court did not misconstrue the documents with respect to ·whether the inventory should have been credited wholly against the note, otherwise there was no issue of fact. Acme has cited no case in its brief to the contrary.

■ As to 2) : Mastic conceded the assignment was for security, but urged that its worth was allocable pro rata against the note and the open account, since it was contemplated that *future* advances on open account equally were secured by not only the mortgage but the assignment. With this we agree.

■ As to 3) : We think the documents reasonably were construed by the trial court. Furthermore, any controversy as to the proration of the inventory is a matter between Mastic and Acme, not Beesleys, who are in no position to dictate the terms of such controversy.

■ As to 4) : Both sides laid the matter in the lap of the court by their mutual motions, and under the facts of this particular case unequivocally invited and authorized the court to decide the case by interpreting the documents. This the court did. Having done so in a case like this, where interpretation of the writings was the only issue, we do not think the court should be required to submit to the subsequent urging of. the loser that although he took his chances without reservation, he must have another go at the case,—although it is conceivable that in some other and unusual case this might be so.

McDONOUGH, CALLISTER, CROCK-ETT, and WADE, JJ., concur.